Let's start with the Accurso matter. I hope I pronounced your client's name correctly. That's correct, Your Honor. All right. Very well. Please come forward. Good morning, Your Honors. My name is James Shrimp. I'm with the law firm of High Swartz. I represent the appellant, the estate of Peter Accurso, and I respectfully request five minutes for rebuttal. Very well. That's fine. Your Honors, there are three issues on appeal for the appellant this morning. The first of which is whether or not the district court erred as a matter of law when it failed to award mandatory attorney's fees and costs to a prevailing party under the Pennsylvania Wage Payment and Collection Law, which would require a remand for a determination of those fees. The second issue is whether the district... Well, I think if that claim remains undisturbed, that's absolutely right. I think the statute's pretty clear that attorney's fees are required. Let me ask a question on the WPCL, and then we'll give you one on the other stuff. So here's my question. How do you reconcile the jury's verdict that, on the one hand, Accurso breached the contract with the jury's finding that Accurso was owed compensation pursuant to the WPCL? I think the district court's memorandum of opinion did a good job of distinguishing those two aspects of the case. In the first aspect of that, where Mr. Accurso was entitled to WPCL income, the court examined the record, found that there were five or six jobs that he had sold prior to termination, and determined that he had a right to any earned income from those sales, which then resulted in the $51,440 award. The $51,000 was a jury award. Correct. I should be more specific with my query. I'm sorry. There's no date for the breach. So the breach presumably happened, or at least as far as the jury's finding, the breach presumably happened somewhere between 2008 and 2012, right? It has to be somewhere. It's unclear. It has to be somewhere there. Right. And the support for the WPCL claim, it would appear, is the compensation that's due to Accurso for the 2011 projects. Correct. Right? Correct. So now maybe my question can be better focused, right? So if the breach occurred, and we don't know when it occurred, if it precedes the 2011 projects, then you can't have WPCL damages, right, because he would no longer be an employee. I know that the judge made a pretrial determination that he was an employee, but if there's a breach that ends the relationship, presumably anything that arose as far as work for Infrared after the breach would be quantum merit. Am I not thinking about this the right way? I think in the employment context, it's a little different to me than in the commercial context, where you have one commercial party, either breaches with another commercial party. Here you have an employee that provided services. Whether it's through contract for quantum merit, the WPCL permits and is a statutory basis for an individual to capture the monies that they are owed for employment that they engage in for an employer. I think that can be separately and distinctly put aside from whether or not there was a breach or not. The jury found that there was a breach, but he continued to provide services. Whenever that breach was, he continued to provide services for the employer, and therefore the WPCL provides a remedy. I have a question here, a fundamental question, and the question is this. What was the basis for his payment? Was it on a commission basis, and was it strictly commission? If he didn't sell anything, he didn't get anything, or what? It was commission basis, Your Honor. I believe it was 50%, some calculation of around 50% of the projects that he was able to sell. 50% of the price paid by the customer? Correct. To him? Correct. All right. Now, so if he didn't sell anything, he didn't get anything, if I understand this correctly. So what kind of an employment contract? Now, I'm talking about an employee, and I'm distinguishing between an independent contractor and an employee. What kind of an employment contract provides for no compensation depending upon your performance as an employee? I mean, usually an employment contract is so much per month or week or hour or something like that, but this contract was strictly on the basis of what he was able to produce for the employer. I mean, I never heard of an employment contract like that. Your Honor, I've run across a number of circumstances where there are employment agreements for straight commission sales representatives. So it's, and again, the right of the WPCL is a statutory award based upon the arrangement. So I have seen those situations before where there has been employment agreements for straight commission. Yeah, but you say it's under the Pennsylvania statute or the wage statute, but of course if in fact the court erred in finding that he was an employee and in fact he was an independent contractor, then that provision, that claim is out, isn't it? It is, Your Honor. But if you look at the district court's analysis of the Morin factors in determining whether or not the individual was an independent contractor or an employee, the district court did a very sound and thorough analysis of those factors. In fact, in one spot stating that Mr. Land, who was the owner, had broad powers to control the manner in which Mr. Accurso accomplished his work as evidenced by the numerous to-do lists that show that Mr. Land had the authority to manage the minutia of Mr. Accurso's employment. The district court found in the balancing factors that some did lean in favor of independent contractor, some did lean in favor of employee, but on the whole, the district court found that those factors made Mr. Accurso an employee. That raised another question in my mind. The court decided this as a matter of law at a pretrial stage. Why wouldn't it be a jury question to determine whether or not he was an employee or an independent contractor? Is that a question of fact? These are, in this circumstance where the discovery was thorough, this can be a question of law for the court prior to the trial. Well, did anybody ask that the jury be charged to make a finding as to whether he was an independent contractor or an employee? It looked to me like the case was just submitted to the jury on the assumption that he was an employee and all that would leave essentially would be damages. But the jury never was asked that question like on a specific interrogatory? I do not believe they were, Your Honor. All right. So then if that's true, then we are making a plenary review on that issue because it's not a finding of fact. It's a question of law, and our standard of review would be de novo plenary. In other words, it looks to me like we don't owe anything by way of deference to the trial court on that issue then. Yeah, I would agree. In other words, we can't hide behind a statement that, well, there was evidence both ways and this is what the court found. I don't think we can do that. Well, clearly your adversary is contesting that, right, because he's contesting the summary judgment and he's contesting the verdict. So, I mean, that's an open question. That's before the court. I didn't come across this. Maybe I missed it. Is Mr. Ocurzo's, and I know he's dead and, you know, we're using his name and so forth, but, you know, is he receiving, or did he receive, I should say, W-2 income or 1099 income? To be honest, Your Honor, I am not sure. I was not trial counsel. I came into this at the end. That's okay. Let's have a conversation about it. You would agree that given the fact that the agreement says independent contractor, that if he received 1099 income, and I understand that the court did a balance, but this is obviously a field that you're in. You have some facility with this type of analysis, that those two factors, an independent contractor agreement and 1099 income, would be pretty persuasive indicia that it was an independent contractor rather than an employee. If 1099 and the agreement says independent contractor, those are two factors that would lean in favor of independent contractor. The court also looked into the specifics of the employment relationship, which they found leaned toward employee, which was that they had significant control over his employment, the day-to-day aspects of his employment. Right. And I take it then in that weighing, the 1099 and the fact that the factor that Judge, I was going to call him Justice, that Judge Greenberg brought up before, that he's on entirely commission, yeah? Yes. There's no draw against it, right? It's a draw and commission. It's just straight commission. I believe so, yes. As I understand it, one of the questions that you would look to under Pennsylvania law is the right of the employer, and I'm using the term employer, not distinguishing between an independent contractor or a classical employer, or for both, but the right of the employer, if it's an independent contractor and then the employer terminates the contractor employee, then in that case, if the person was an independent contractor, that could be a breach of contract, whereas, and I'm laying aside union contracts and all that, I'm thinking about common law, but that if he was an employee, then the employer could fire at will, as I understand it. Correct. I mean, depending on the contract, though, I mean, the contract may not provide for any termination provision, so in those circumstances, it may act as a termination at will anyways as well, even if there was a contract. Right. Could be. This person, what did his contract provide about termination? Your Honor, I'm unsure. I'll switch gears for a minute. One of the issues that you raised was Mr. Lansley's opinion testimony. It seems to me that that issue is governed by actually Judge Greenberg's opinion in lightning lube. Why isn't it? Your Honor, we withdraw that argument. I think Mr. Lansley was qualified to provide that opinion. Okay. Your Honor, I'm at red light. Any further questions? Relax. Okay. One second. My interest was piqued on the agreement, so I'm just trying to get the agreement in front of me. Yeah, I mean, a quick look. I don't see a termination clause, but we'll ask your adversary about it in case I've missed it. Question on the trade secrets claim. Your brief says the jury's verdict on the trade secrets claim is based on Mr. Acurso's sharing of the username and password to Selectory. But there are several places in the record, deposition testimony of Mr. Acurso specifically in a trial, that refer to sharing pricing information. Why wouldn't that count as a misappropriation of trade secrets? Put aside the username and password. Pricing information, unless it's kept locked down within the company and unless you have confidentiality agreements with your customers, tend not to be trade secrets in the industry. Because unless you have a confidentiality agreement with your customers saying you're not going to disclose our pricing to anybody, I can pick up the phone and call them, and they could choose to disclose that pricing information if they chose to. Sounds totally reasonable. Is that in the record? I do not know if there's any evidence to that effect. No, I couldn't help but wonder, and it was a 50% commission. That seems like a tremendous commission on a construction-type contract. I mean, half of the money would go to the person who got the deal, and the person doesn't really have any expenses to perform the contract with the customer. I don't know, maybe I'm wrong, but it seemed to me it was a very high commission, which would lead me to think the person might have been an independent contractor. I mean, who would ever think that if you got somebody a contract that you would get half the money for it? Maybe roofing is overcharged, I don't know. Isn't that a high commission, 50%? It strikes me as high. We'll get you back. Hi. Do you have any further questions? No, I don't. Okay, we'll get you back on the line. Thank you. Thank you. Can we – I'm sorry. Good morning, Your Honors. Todd Moser for Infrared Roofing Dynamics. Audrey Strine of Brian Land. Okay. As a threshold matter, I know it's not standard practice, but is there any chance I can reserve two minutes for rebuttal on my appeal claims? None whatsoever. Got it. Had to ask. Hey, it's great, you know. I mean, you're telling me that you're really a trial lawyer at heart. Fair enough. It's all good. Was that none whatsoever, no chance that he can save two minutes? I didn't quite understand the – That's what I meant, but of course – Okay. Sorry, I just wanted to get it clear. Yes. In other words, under no circumstances. But we'll have you here as long as we have questions. So let's start with the question that I asked your adversary. I presume that part of the reason we're here is that there's some inherent, at least seemingly inherent, inconsistency with the jury's finding of no breach on behalf of your client, but on the other hand, finding a WPCL violation. And maybe you can just tease that apart. Because one of the things that I was thinking of is, well, how can we sort of figure out what went on other than this must have been some sort of compromise verdict if we don't know when the breach was? Because if the breach preceded the earnings on the 2011 projects, then you'd probably say he could possibly have a quantum error, but it wouldn't be something pursuant to the agreement. But as I look quickly through the agreement, there doesn't seem to be any contemplation of bases for termination or what happens in the event of termination. So I've kind of set the table. There's a lot to unpack there. What I want to start out with is the Coffando decision. We cited in the brief the language that a breach is dispositive. You're asking, when does the breach occur? I'm asking, is it relevant? No. The Coffando decision is similar to this case. Because in Coffando, the guy theoretically earned what he was entitled to, but breached the agreement by virtue of the fact that he didn't stay in employment. So in that case, the earnings was prior to the breach, and the superior court still had said, since you breached, you're not entitled to the gain-sharing plan. So if the facts of Coffando are earning prior to breach, nevertheless, there's a breach, you get no wage payment collection, Robert. Just remind me, Coffando is not a WPCO case, is it? I think it is. It is? Yeah. Yeah, Coffando is a language that it's dispositive. I think Judge Greenberg raised some interesting questions about the independent contractor versus employee standard. There's a lot more than the fact that this was just a commission-based compensation structure. If you look at the agreement, there's nothing in the actual agreement that talks about how Mr. Land was to control Mr. Accurso's work. That's a threshold matter. Second, the court points to Mr. Land's direction on day-to-day tasks. What those really were were clerical tasks. And, in fact, there was no evidence that at a time of the termination that he was still even performing those tasks. The reality of it is Ms. Strine was. So I think the notion that the day-to-day clerical tasks outweighs all the other things in this case is wrong. And we have to remember, in none of the cases that are cited to support the notion that this man was an employee, did the employee in that case hold himself out as an independent contractor, take advantage of that status? That didn't happen in any of those cases. And I think from a 10,000-foot view, the contractor in this case ought to be able to rely on what both parties are saying the contractor is. Well, we have a case that's a fairly recent vintage. I'm pretty sure it's called Verma, in which the independent contractor employee question arose. And, in that case, there was an agreement between the employees and the employer, and the agreement described the relationship as one of an independent contractor, but the district court found that the independent contractors were, in fact, employees, and we affirmed that. So I'm wondering what your – I know it wasn't in the briefing, but it just occurred to me. Sure. I didn't write the opinion, but I was on the panel. It's got to be within the last two months. So if we put aside the notion that the fact that you have an independent contractor agreement is critical, because I think once you read the opinion, that maybe is something you put aside. Sure. Tell me – first, do you know, is it W-2 or is it 1099? 1099. Is that in the record? Is that in the record? Yes. In fact, Mr. Accurso asked for that. Look at his deposition. It's in the DEP, which is in this appendix. Okay. Is the distinction a factual or a legal one? You know, I take issue with what Pennsylvania law is on that. I look at that. What is the law? And then you can tell me why you take issue with it. Pennsylvania law is that it's a legal issue. I have to concede that. Yeah. I think that we're exercising plenary review on that issue if it's a legal issue. Why do you take issue with things? Why do you take issue with – Because I think these are – it's a balancing of facts. I think the jury is supposed to balance facts. I don't think a judge is supposed to do that. I mean, I assumed when I got into this case that that was a fact question, and that was my natural instinct, because what you're looking at is which facts are more important. I don't think that's the function of a judge. I'm wrong. Then this issue under that theory should have been submitted to the jury to determine whether he was an employee or an independent contractor. I would agree. My position is I would agree with that. But did anybody ask that the jury be given that question? It was not. It was assumed throughout trial, and counsel for Accurso repeatedly made clear that the judge found that this man was an employee. So it was never an issue presented to the jury. Well, then, if nobody asked it to be presented to the jury and the judge did make a determination on it, why shouldn't we, no matter what might be true in some other case, just follow that procedure and go on the assumption that it's a judge issue? Well, that's my quandary. That's my quandary, is that the judge and the Pennsylvania law is that it's a legal issue, and everyone operated under that assumption. Just because it's a legal issue allows this court to review how the court balanced those factors and whether there was an error in that process. But that's a plenary review. Yes. What are your three best facts besides the fact of the independent contractor and the 1099 that he's an employee? If I may. Okay. I'm sorry, that he's an independent contractor. So setting aside how the contract is actually drafted, Judge Greenberg's point that he was commission-based is a big factor. I cited a revenue ruling or a label ruling regulation in my brief. I can't recall the specific numbers of it off my head. He was required to pay half the expenses of the company. I don't know of an employee that's required to pay half the expenses of a company. He was tasked with training subcontractors. He could have hired subcontractors and employees. And this is the fact that is not present in any other case where someone's found to be an employee. This man took advantage of the fact that he was an independent contractor. He put it out there. He asked for it. He took advantage of it. And now he's turning around and trying to get the benefit of being an employee. I think that's not fair. I think the company in this case should have been allowed to think, this guy is saying he's an independent contractor. He's putting himself out as an independent contractor. He asked us to 1099 him. Why shouldn't the employer or the contractor in that case rest assured that he is, in fact, an independent contractor? If we leave the wage payment verdict alone, do you agree that the attorney's fees are mandatory? Yes. So it's all a matter of whether that verdict stands or not. Yes. As I understand it, in a sense, you don't think this is complicated. You think we should uphold the verdict on the breach of all the transgressions and uphold the verdict on the polygraph issue and reverse and throw out the wage payment issue and that you then clean the table? Yes. That's the way I think you see this case. I see that plus. Plus? Plus. I should have been good enough. So I don't mean to be greedy, but I've also raised the fact that the trade secrets claim should have resulted in exemplary damages and attorney's fees. So your adversary says that the sharing of pricing information wasn't, in the first instance, it sounds like he's arguing it wasn't proprietary. And as a second point, I think he's like, hey, this really wasn't anything that was unique within the company. It was kind of just generally known who's doing what. What's in the record that makes that incorrect? Mr. Land's testimony, Ms. Strine's testimony. And, again, as a threshold matter, I think somebody here recognized nobody ever argued that pricing information is not proprietary. That was put out at trial. It was testified that that was the blueprint of the company's business, and the jury accepted that. You know, in a sense, you're going against the trend. I read the newspapers, and you can't help but feel that you see around the country efforts being made to characterize employees as employees rather than independent contractors, because, of course, it's to the advantage of the worker to be called an employee. He gets various benefits. That seems to be the trend. I don't know. Maybe I'm wrong. No, I agree with that. I had trouble finding, in all candor, I had trouble finding Pennsylvania cases that supported my position, but I had trouble finding Pennsylvania cases where the contractor in this case was confronted with a situation where the independent contractor had all of the things that he attached to this relationship and then took advantage of. With regard to the sharing of pricing information, we're talking about the contact between Mr. Recurso and Mr. Medina, yeah? Yes. What? Yes. Yes. Okay. Definitely damages is discretionary. Why was there an abuse of discretion not to award them? Because what the judge did in this case, I put this terse phrase in my brief, is he set a pox on both their houses. That assessment in and of itself is wrong, and that's not what the statute says. First of all, my clients aren't the one that acted willfully and maliciously. My clients aren't the one that stole business. My clients were trying to protect their business and were operating under the assumption based on Mr. Recurso's taking advantage of the fact that he was an independent contractor. In essence, my clients made a mistake. So the notion that they acted badly is wrong. And even if they did, and I don't think they did, the statute doesn't say if you find someone to act willfully and maliciously, the other side doesn't get exemplary damages if you don't like the winning party. That's not what the statute says. Well, then when would there ever be a trade secrets case proven where exemplary damages weren't warranted? That's a good question. And offhand, I can't think of one. But I think this case they should have been awarded because the conduct in this case was so bad. Let me follow up on the Medina issue that we're talking about. So in the transcript, does Mr. Recurso say, admit, that he shared the information with Medina? Or is this all an extrapolation from the handwritten notes on the 2006 memo? There's the Hibbert Project. Yeah. I mean, that's that is clear trade secret information. There was a number of there was a lot of testimony from Mr. Land, Mr. Strine about the information that was shared. And, you know, another thing to consider here is I don't know if this is obvious, but Mr. Recurso had a motive to be feeding business to Mr. Medina. Mr. Recurso was a cosigner on Mr. Medina's mortgage, which Mr. Medina was about to walk away from, which would have left Mr. Recurso holding the bag. So there's circumstantial evidence at a minimum that he was doing this, notwithstanding the fact that he the Hibbert Project was not in question. And there are other instances where the jury believed testimony of Mr. Land and Mr. Strine. And I can't remember the company's names. I'd have to go through my notes to recite the company's names. Rivera, Benson, PHS, UPS. Chanel was one where they the company actually got the contract but lost future business because of Mr. Recurso's interference. Now, Judge Greenberg, do you have anything else? No, no, that's enough. Okay. Thank you. Oh, you know, you wanted rebuttal because you're a cross appellant. Right. That's what you meant. Yes. Oh, sure. You can have two minutes. Well, two minutes after he goes. No, no, after he goes. No, he said enough. Okay. Just to address one piece of leftover business from my argument, I looked at the contract, the term. There are no termination for cause provisions. It's a four-year deal, which then gets re-upped for two-year periods thereafter.  Cafando came up during my opponent's argument. Cafando is not on point with this case. It is a WPCL case. It is a WPCL case. However, where Your Honor might have been thinking is the court found that the gain-sharing plan that was at issue in that case was not a wage under the WPCL. So it's not on all fours with the case here that's at issue. With respect to Your Honor raised the Verma decision, we didn't raise it in our papers, but the district court actually did in its decision. And in its decision, staying at Mr. Recurso. We're clear for the record. If the district court mentioned it in its decision, it was only mentioning the district court opinion because the circuit court opinion literally just came out within the last couple of months. You are correct. My apologies, Your Honor. No, no, no. You can tell me what it said. I just wanted to be clear that it was the district court that you're citing and not the appellate court. Did you affirm it before I tell you what they said? We did. All right. In the block quote from that decision, the defendant exerts significant control over, and it was a case involving dancers' behavior and appearance. Defendant dominates the key levers driving the dancer's opportunity for profit, and the dancers have no specialized skills. So in that, and that was quoted in a portion of the opinion where, again, the district court was analyzing Mr. Recurso's talent, skills, et cetera, again finding that based upon that court's decision that he was on the employee's side and not the employer's side. Let me ask you this question. I think one of the reasons that it was, what your adversary is saying, I believe, is, okay, the district court ruled upon it, but what we're concerned about is, should the district court have ruled upon it if there are genuine disputes of material fact? Should it have been a jury question? Now, I think there's room for disagreement as to whether it always should be a jury question. In some instances, there won't be a sufficient record to determine that there are genuine disputes of material fact, in which case it's entirely appropriate for the trial court, as an initial matter, to do it. So my question to you is, in this particular instance, were there genuine disputes that should have precluded the district court from going forward on the question? I don't believe so. After discovery, I don't think there were much disputes between the parties as to what the four corners of Mr. Accurso's job was with infrared. And those are the factors that you look to. I mean, both parties agree that this was the agreement and et cetera, et cetera, et cetera, what he did. So I believe it was ripe for a summary judgment determination. Okay, that's helpful. And then also the district court did cite an unpublished opinion of this court, Safran, in an added direct quote. However, it is the economic realities of the relationship, not the structure of the relationship, that is determinative. So again, it's not that he has an independent contractor written on his agreement or that he's paid by commission. You have to dig deeper than that to make the determination as to whether he's an employee or an independent contractor. And then with respect to trade secrets, there was one other issue that my opponent brought up in their brief that they believed was a trade secret, this Hoover system, computer system. That's a proprietary third party computer program that anybody can buy if they pay the subscription to it. So the program itself is in no way a trade secret. And then also in our briefing, just to touch on it briefly, there was a discussion in chambers as to what the trade secret claim was actually valued at. Counsel for the appellee told the court in a charging conference that the claim was worth $13,000 and anything above and beyond that would be too speculative to put in front of the jury. That sounds really, really interesting, but how could we possibly take that into account? There's an opportunity to remit the verdict. No, the information you just gave us is from a charge conference. I said a lot of things when I was a DJ in the roving room, and I'm glad that a lot of them won't come to light. So how are we supposed to take that into account? It's on the record, your honor. I'm so sorry. You just said you said it in a charging conference in chambers. You mean a charging conference on the record. Correct. Oh, great. Oh, OK. Yes. I thought you meant like. No. OK. All right. Thank you. Judge Greenberg, anything further, sir? Nothing further. Thank you, your honor. I'll be quick. The economic realities of the relationship is the language I just heard. The economic realities of this relationship are where the Mr. Curser was paid strictly on commission and he was responsible for half the expenses of the company and he was a ten ninety nine employee. OK. So you're saying that there's been with plenary review. There's been an error of law. Yes. Not that there are genuine disputes of material fact. Yeah. Both. No. Yes, I agree. I wish we could. You know, I wish Pennsylvania law says this is a question of fact. But that's why I'm so many things that I wish Pennsylvania law did. But to your first and other Jersey guy. But please answer the question if you were. Yes. As a matter, as a plenary matter, it is a question of law. OK. The Hoover issue is the idea and the password. I can't you can't give somebody my Google name and password. I mean, that's proprietary. That was testified to. And the value is attached to that. As far as the chamber's discussion, counsel may very well have said that. But there were five trade secrets submitted to the jury. That wasn't the only trade secret submitted to the jury. There were four other ones. So and the jury returned verdicts on those. So I don't think the chamber's discussion gets us anywhere. That's all I have for about. OK. I have nothing further. All right. Very well. Counsel, thank you very much for a well-argued case. We'll take the matter under revise.